# E-filing

**PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

Name  BELL         TOMMY
_____
(Last)        (First)        (Initial)

Prisoner Number  V-09957

Institutional Address  P.O. BOX 7500 (A/4/224)

CRESCENT CITY, CALIFORNIA
_____

====================================================

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

TOMMY BELL
_____          )
(Enter the full name of plaintiff in this action.)        )
                                                          )
              vs.                                         )    Case No.   **1493**
                                                          )    (To be provided by the clerk of court)
_____          )
                                                          )    PETITION FOR A WRIT
_____          )    OF HABEAS CORPUS
                                                          )
_____          )
                                                          )
BOB HOREL (WARDEN)                                        )
_____          )
(Enter the full name of respondent(s) or jailer in this action)

====================================================

Read Comments Carefully Before Filling In

Underline **When and Where to File**

    You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

    If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS          - 1 -

1   Who to Name as Respondent

2        You must name the person in whose actual custody you are.  This usually means the Warden or

3   jailor.  Do not name the State of California, a city, a county or the superior court of the county in which

4   you are imprisoned or by whom you were convicted and sentenced.  These are not proper

5   respondents.

6        If you are not presently in custody pursuant to the state judgment against which you seek relief

7   but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8   custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9   was entered.

10   <u>A.  INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

11       1.  What sentence are you challenging in this petition?

12          (a)    Name and location of court that imposed sentence (for example; Alameda

13                County Superior Court, Oakland):

14      ALAMEDA COUNTY SUPERIOR COURT      OAKLAND, CALIFORNIA

15              Court                        Location

16          (b)    Case number, if known  H38279A

17          (c)    Date and terms of sentence  58 YEARS TO LIFE

18          (d)    Are you now in custody serving this term?  (Custody means being in jail, on

19                parole or probation, etc.)     Yes <u>X</u>     No _____

20                Where?

21                Name of Institution:  PELICAN BAY STATE PRISON

22                Address: 5905 LAKE EARL DR. P.O. BOX 7500

23       2.  For what crime were you given this sentence?  (If your petition challenges a sentence for

24   more than one crime, list each crime separately using Penal Code numbers if known.  If you are

25   challenging more than one sentence, you should file a different petition for each sentence.)

26   PC, §187, Subd.(a), 664 PC, § 245, subd.(b) PC, §§ 211, 664 and

27   PC, §12021, subd.(a)(1)

28

3. Did you have any of the following?

    Arraignment:               Yes __X__    No _____

    Preliminary Hearing:      Yes __X__    No _____

    Motion to Suppress:      Yes _____    No __X__

4. How did you plead?

    Guilty _____    Not Guilty __X__    Nolo Contendere _____

    Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

    Jury __X__    Judge alone _____    Judge alone on a transcript _____

6. Did you testify at your trial?           Yes _____    No __X__

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment          Yes __X__    No _____

    (b)    Preliminary hearing    Yes __X__    No _____

    (c)    Time of plea          Yes __X__    No _____

    (d)    Trial               Yes __X__    No _____

    (e)    Sentencing           Yes __x__    No _____

    (f)    Appeal             Yes __x__    No _____

    (g)    Other post-conviction proceeding    Yes _____    No __X__

8. Did you appeal your conviction?      Yes __X__    No _____

    (a)    If you did, to what court(s) did you appeal?

            Court of Appeal        Yes __X__    No _____

            Year: _2007_____    Result: __DENIED_____

            Supreme Court of California    Yes __X__    No _____

            Year: _2007_____    Result: __DENIED_____

            Any other court        Yes _____    No __X__

            Year: _____    Result: _____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

            YES, WITH THE EXCEPTION OF GROUND(S) TWO AND THREE.

petition?                                          Yes __X__     No __X__

(c)   Was there an opinion?                        Yes __X__     No_____

(d)   Did you seek permission to file a late appeal under Rule 31(a)?

                                                   Yes_____    No __X__

If you did, give the name of the court and the result:

_____

_____

9.  Other than appeals, have you previously filed any petitions, applications or motions with respect to

this conviction in any court, state or federal?    Yes_____    No __X__

[Note: If you previously filed a petition for a writ of habeas corpus in federal court that

challenged the same conviction you are challenging now and if that petition was denied or dismissed

with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

for an order authorizing the district court to consider this petition. You may not file a second or

subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

U.S.C. §§ 2244(b).]

(a)   If you sought relief in any proceeding other than an appeal, answer the following

      questions for each proceeding. Attach extra paper if you need more space.

   I.   Name of Court: ____COURT OF APPEAL (SEE EXHIBIT A & B)____

        Type of Proceeding: __HABEAS CORPUS_____

        Grounds raised (Be brief but specific):

        a._CONTESTING THE ATTEMPTED MURDER CHARGE_____

        b._____

        c._____

        d._____

        Result: __DENIED BECAUSE OF PROCEDURAL RULES__ Date of Result: __SEPT 10, 2007__

   II.  Name of Court: _____ _____

        Type of Proceeding: _____ _____

        Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS          - 4 -

1    a._____

2    b._____

3    c._____

4    d._____

5    Result: _____Date of Result:_____

6    III.   Name of Court: _____

7    Type of Proceeding: _____

8    Grounds raised (Be brief but specific):

9    a._____

10   b._____

11   c._____

12   d._____

13   Result: _____Date of Result:_____

14   IV.   Name of Court: _____

15   Type of Proceeding: _____

16   Grounds raised (Be brief but specific):

17   a._____

18   b._____

19   c._____

20   d._____

21   Result: _____Date of Result:_____

22   (b)   Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                              Yes _____    No_____

24   Name and location of court: _____

25   B. GROUNDS FOR RELIEF

26   State briefly every reason that you believe you are being confined unlawfully.  Give facts to

27   support each claim.  For example, what legal right or privilege were you denied?  What happened?

28   Who made the error?  Avoid legal arguments with numerous case citations.  Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS        - 5 -

1  need more space.  Answer the same questions for each claim.

2      [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3  petitions may be dismissed without review on the merits.  28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467,  111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

                    ALL CLAIMS ARE ATTACHED ON ADDITIONAL PAGES...

5  Claim One:_____

6  _____

7  Supporting Facts:_____

8  _____

9  _____

10 _____

11 Claim Two:_____

12 _____

13 Supporting Facts:_____

14 _____

15 _____

16 _____

17 Claim Three:_____

18 _____

19 Supporting Facts:_____

20 _____

21 _____

22 _____

23      If any of these grounds was not previously presented to any other court, state briefly which

24 grounds were not presented and why:

25 IAC REASONS_____

26 _____

27 _____

28 _____

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases:

CONTINUED ON ADDITIONAL PAGES...

_____

_____

Do you have an attorney for this petition?          Yes_____          No__X__

If you do, give the name and address of your attorney:

_____

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on __2/26/08_____          _____

              Date                      Signature of Petitioner

(Rev. 6/02)

PET. FOR WRIT OF HAB. CORPUS          - 7 -

## STATEMENT OF THE CASE

Petitioner Tommy Bell was convicted by a jury of one count of attempted murder (Pen. Code, §§ 187, subd. (a), 664), [1] five counts of assault with a semi-automatic firearm (§ 245, subd. (b)), three counts of attempted second degree robbery (§§ 211, 664), one count of second degree robbery (§ 211), and one count of possession of a firearm by a felon (§ 12021, subd. (a)(1)). On appeal, petitioner contends there was insufficient evidence to support his conviction of assault with a semiautomatic firearm against Alameda County Sheriff's Deputy Daniel Hemenway. The Court of Appeal affirmed the trial court's judgment.

## STATEMENT OF FACTS

On October 13, 2004, Diana Valencia and her brother Gilberto Valencia accompanied their housemates Marco Trejovilla and Luis Medrano, as well as their neighbor Mike Eskridge, in Trejovilla's car to a Quick Stop market located near their San Leandro apartment complex. After Trejovilla parked his car outside of the Quick Stop, Eskridge walked inside the store and purchased beer. At the same time, petitioner was a passenger in a car parked at the Quick Stop, along with Joshua Cole, Yonas Melles, "Mead," and "Sid," the driver of this second automobile. From the parkinglot, petitioner and his companions saw Eskridge pull what they believed to be a large quantity of money out of his pocket while he was purchasing the beer. Petitioner then told his companions that he was going to rob Eskridge and directed Sid to follow Trejovilla's car as it left the Quick Stop parking lot.

---

[1] All further unspecified code sections refer to the Penal Code.

Upon returning to the apartment complex, Trejovilla parked his car in his parking space under a carport. Gilberto got out of the car and walked inside his apartment. Trejovilla also got out of the car, leaving Diana, Medrano, and Eskridge in the backseat. While this occurred, Sid stopped his automobile across 164th Avenue from the apartment complex, let petitioner and Melles out, and then drove away with Mead and Cole.

Trejovilla got out of his car and was met by his friend and neighbor Arturo Cruz, who requested a ride to the BART station. While the two were conversing, petitioner and Melles approached them, and petitioner asked Cruz if he wanted to buy some marijuana. Cruz replied, "no," and petitioner and Melles pulled out guns, with petitioner pointing his at Cruz's face. Cruz attempted to knock the gun from petitioner's hand, but was unsuccessful and only momentarily redirected petitioner's aim. Petitioner then re-aimed the gun at Cruz and shot him in the chest.

Deputy Hemenway, on motorcycle patrol and driving westbound on 164th Avenue at the time, heard the gunshot as he passed by a wall behind the carport. He made a u-turn and rode his motorcycle back toward the carport.

After shooting Cruz, petitioner pointed his gun at Trejovilla, and then Diana, Medrano, and Eskridge, who remained in the backseat of Trejovilla's car. Petitioner threatened to shoot them if they did not give him something. Diana took Medrano's cell phone and handed it to Trejovilla, who then handed it to petitioner. Petitioner and Melles then left.

Meanwhile, Cruz had made his way around the wall behind the carport and saw Hemenway driving by on his motorcycle. Cruz yelled for Hemenway, who was unable to understand what Cruz said, but saw Cruz's bloodied T-shirt and stopped his motorcycle. Cruz took a couple steps and then fell to the ground.

Immediately after Cruz fell to the ground, Hemenway saw petitioner [running] from the carport in his direction from a distance of approximately 40 feet. Hemenway saw a handgun in petitioner's [right] hand. Petitioner had the gun pointed downward toward the ground. Hemenway yelled at petitioner, [d]irecting him to [s]top. Petitioner did not [stop], but instead [s]lowed to a [w]alk, turned his head to look in Hemenway's direction, and began to bend his [r]ight elbow, raising the gun up. As the gun reached just above the level of his waistline, he began turning his [torso] and [gun] toward Hemenway. Hemenway believed petitioner was going to try to shoot him, so he drew his service weapon and fired three shots at petitioner. Petitioner then fell to the ground, having been shot in the abdomen. Hemenway later found petitioner's loaded gun on the ground near where petitioner fell.

Petitioner was chared with one count of attempted murder (§§ 187, subd. (a), 664), five counts of assault with a semiautomatic firearm (§ 245, subd. (b)), three counts of attempted second degree robbery (§§ 211, 664), one count of second degree robbery (§ 211), and one count of possession of a firearm by a felon (§ 12021, subd, (a)(1)). The information included allegations of enhancements for the infliction of great bodily injury, personal and intentional discharge of a firearm, two prior strike convictions, and one prior prison term.

A jury convicted petitioner on all counts, and found the firearm and great bodily injury enhancement allegations to be true. At a separate bench trial, the court found the prior strike convictions and the prior prison term to be true.

Petitioner was sentenced to 58 years to life in state prison and subsequently filed a notice of appeal on November 10, 2005. On appeal, petitioner contended there was insufficient evidence to support his conviction of assault with a semiautomatic firearm against Hemenway. The Court of Appeal affirmed the trial court's judgment.

## GROUND I

### RELIEF SHOULD BE GRANTED TO DETERMINE WHETHER PETITIONER WAS DENIED HIS FEDERAL AND STATE CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW BECAUSE HIS CONVICTION FOR ASSAULTING DEPUTY HEMENWAY WITH A SEMIAUTOMATIC FIREARM WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Facts such as petitioner's weapon possession and Hemenway's earlier contact with the wounded Cruz did not support the conclusion that petitioner's next action, after being told "stop," was going to be the completion of a battery. Petitioner was "running" when being told to "stop" by Hemenway, and as a natural reaction, one must [slow to a walk], in order to not fall from attempting to instantly cease their run: as petitioner did.

Petitioner did nothing more than react in compliance with Hemenway's command, by [s]lowing to a walk, and turning his head toward the deputy. Hemenway, as an officer never identified himself as one, but when Hemenway assumed petitioner recognized him as an officer, Hemenway also assumed petitioner's attempts to raise his hand(s) was an advancement of deadly force and not motivated toward petitioner's acknowledgment of Hemenway being a police officer, and an attempt to surrender by 'putting his hands above his head,' as would normally be the instructions from an officer. (3RT 745.)
Hemenway testified that the petitioner "was running kind of in a ducked position, his knees bent and kind of bent over a little bit." (3RT 736) Hemenway went on to testify that the petitioner was running at him "in a diagonal direction," and that Hemenway could see the petitioner's left side more so than his right, in which petitioner held the weapon. Hemenway goes on to testify, stating, "I saw the subject turning, bringing the gun up and turning; then I drew my weapon and fired." (3RT 742).

In the latter portion of Hemenway's cross-examination he testifies what an officer is instructed to base force on, as described by him in the following continuum. "The bottom of the continuum is going to be verbal orders, command presence, so on, which is no force. When that doesn't work, it goes up to the next level of force, which might be verbal orders and actually putting your hands on somebody, using a control hold. The next level of force would be using some type of weapon such as a baton, or a personal body weapon such as hands and feet, which would be fist or kicking. The next level of force would be intermediate force, which would be using — can include impact weapons such as a baton as well as O.C. spray, pepper spray. And it continues to lethal force, which either be a car or a handgun." (3RT 745.).

Logic illustrates that a majority of these levels of force were not applicable in the case at hand, and were justifiably ignored. Though, the first level of force, one which is to precede all levels was only partially applied by telling the petitioner to "stop." There was an insufficient application of the above continuum by Deputy Hemenway. As, "Stop, drop the weapon," or "Police officer, drop the weapon or I'll shoot," are both verbal commands that are prescribed by the continuum. Noticing that the petitioner was running while bent at the knees, and then naturally slowed to a walk when being told by Hemenway to "stop," could be easily interpreted as compliance as it was interpreted as assault.

As petitioner, supporting case law, and the Court of Appeal notes: the gun was not pointed at the officer. Deputy Hemenway, in his panicking assumption

shot the petitioner instead of noticing the success of his first (stop) verbal command. This panicking action by Hemenway denied petitioner a chance to surrender, and because petitioner was not shot in a portion of his body that prevents reflexes, could have returned fire to Hemenway if that was his initial intentions.

Furthermore, this supports petitioner's argument put forth on appeal; being, "any conclusion that appellant assaulted Hemenway was necessarily based on suspicion, speculation, supposition, surmise, and conjecture. And is further supported by, People v.Palmer (2001) 24 Cal.4th 856, 861.) A finding based on conjecture or surmise cannot be affirmed. (People v. Memro (1985) 38 Cal.3d 658, 694.) This is because suspicion is not evidence; it only raises a possibility, which will not support an inference of fact. To justify a conviction, the trier of fact must be persuaded to a near certainty. Even a strong suspicion is insufficient to support the finding. (People v. Thompson (1980) 27 Cal.3d 303, 324.)

In People v. Williams (2001) 26 Cal.4th 779, his conviction for assault with a semiautomatic firearm was not supported by substantial evidence. Here the Court clarified the crime of assault in pertinent part as follows:

> In determining which meaning of "attempt" the Legislature
> intended to use in section 240, we must look to the historical
> 'common law definition' of assault. (Code commrs. note foll.
> Ann. Pen. Code, § 240 (1st ed. 1872, Haymond & Burch,
> commrs.-annotators) pp. 104-105.) "'The original concept of

criminal assault developed at an earlier day than the doctrine of

criminal attempt in general . . . .'" ([People v.] Colantuono

[1994] 7 Cal.4th [206] at p. 216, quoting Perkins on Criminal

Law (2d ed. 1969) ch. 2, § 2, pp. 118-119.) Assault "is not

simply an adjunct of some underlying offense [like criminal

attempt], but an independent crime statutorily delineated in

terms of certain unlawful conduct immediately antecedent to

battery." (Colantuono, at p. 216.) Unlike criminal attempt where

the'" act constituting an attempt to commit a felony may be

more remote,  "[a] assault is an act done toward the

commission of a battery' and must "immediately" precede the

battery. (Perkins & Boyce, Criminal Law (3d ed. 1982) p. 16

People v. Williams, supra, 26 Cal.4th 779, 786.) The Williams Court

continued, "assault occurs whenever the next movement would, at least to

all appearances, complete the battery." (Id. at p. 786, internal quotation

marks omitted.) Here, it is highly possible the petitioner was surrendering

to the sight commands from Hemenway. As would be an [appearance] forfeited

by the assumption and panic of Hemenway, which resulted in him firing three

rounds instead of two, exceeding departmental protocol, which had been standing

for four years at the time of this exceeding. (3RT 718.) Further illustrating

that Hemenway fired his weapon out of panic, as he couldn't control his

fear enough to give a verbal order, or follow the operating procedure when

firing his weapon. Despite this procedure had been long-standing for four

years. Moreover, making his belief that he was about to be assaulted based

on suspicion, speculation, supposition, surmise or conjecture; which all

descend from assumption.

**Petitioner's trial counsel rendered ineffective for not establishing the fact that Deputy Hemenway never ordered petitioner to "drop the gun" or gave the petitioner a chance to surrender.**

Petitioner cites all applicable Constitutional Amendments in support of the above ground, as well as the supplemental IAC claim.

(U.S. Const., 6th and 14th Amend.; Cal. Const., art I, § 15; Strickland v. Washington (1984) 466 U.S. 688, 687-688 [104 S.Ct. 2052, 80 L.Ed.2d 674 (Strickland)]; People v. Ledesma (1987) 43 Cal.3d 171, 215-218 (Ledesma); People v. Fosselman (1983) 33 Cal.3d 572, 584 (Fosselman).)


In conclusion, petitioner seeks relief by way of habeas corpus.

# APPENDIX

Filed 2/8/07 P. v. Bell CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>TOMMY BELL,<br><br>          Defendant and Appellant. | A112062<br><br>(Alameda County<br>Super. Ct. No. H38279A) |

Appellant Tommy Bell was convicted by a jury of one count of attempted murder (Pen. Code, §§ 187, subd. (a), 664),[1] five counts of assault with a semiautomatic firearm (§ 245, subd. (b)), three counts of attempted second degree robbery (§§ 211, 664), one count of second degree robbery (§ 211), and one count of possession of a firearm by a felon (§ 12021, subd. (a)(1)). On appeal, appellant contends there was insufficient evidence to support his conviction of assault with a semiautomatic firearm against Alameda County Sheriff's Deputy Daniel Hemenway. We affirm the lower court's judgment.

## BACKGROUND

On October 13, 2004, Diana Valencia and her brother Gilberto Valencia accompanied their housemates Marco Trejovilla and Luis Medrano, as well as their neighbor Mike Eskridge, in Trejovilla's car to a Quik Stop market located near their San

---

[1] All further unspecified code sections refer to the Penal Code.

1

Leandro apartment complex. After Trejovilla parked his car outside of the Quik Stop, Eskridge walked inside the store and purchased beer. At the same time, appellant was a passenger in a car parked at the Quik Stop, along with Joshua Cole, Yonas Melles, "Mead," and "Sid," the driver of this second automobile. From the parking lot, appellant and his companions saw Eskridge pull what they believed to be a large quantity of money out of his pocket while he was purchasing the beer. Appellant then told his companions that he was going to rob Eskridge and directed Sid to follow Trejovilla's car as it left the Quik Stop parking lot.

Upon returning to the apartment complex, Trejovilla parked his car in his parking space under a carport. Gilberto got out of the car and walked inside his apartment. Trejovilla also got out of the car, leaving Diana, Medrano, and Eskridge in the backseat. While this occurred, Sid stopped his automobile across 164th Avenue from the apartment complex, let appellant and Melles out, and then drove away with Mead and Cole.

Trejovilla got out of his car and was met by his friend and neighbor Arturo Cruz, who requested a ride to the BART station. While the two were conversing, appellant and Melles approached them, and appellant asked Cruz if he wanted to buy some marijuana. Cruz replied, "no," and appellant and Melles pulled out guns, with appellant pointing his at Cruz's face. Cruz attempted to knock the gun from appellant's hand, but was unsuccessful and only momentarily redirected appellant's aim. Appellant then re-aimed the gun at Cruz and shot him in the chest.

Deputy Hemenway, on motorcycle patrol and driving westbound on 164th Avenue at the time, heard the gunshot as he passed by a wall behind the carport. He made a u-turn and rode his motorcycle back toward the carport.

After shooting Cruz, appellant pointed his gun at Trejovilla, and then at Diana, Medrano, and Eskridge, who remained in the backseat of Trejovilla's car. Appellant threatened to shoot them if they did not give him something. Diana took Medrano's cell phone and handed it to Trejovilla, who then handed it to appellant. Appellant and Melles then left.

2

Meanwhile, Cruz had made his way around the wall behind the carport and saw Hemenway driving by on his motorcycle. Cruz yelled for Hemenway, who was unable to understand what Cruz said, but saw Cruz's bloodied T-shirt and stopped his motorcycle. Cruz took a couple steps and then fell to the ground.

Immediately after Cruz fell to the ground, Hemenway saw appellant running from the carport in his direction from a distance of approximately 40 feet. Hemenway saw a handgun in appellant's right hand. Appellant had the gun pointed downward toward the ground. Hemenway yelled at appellant, directing him to stop. Appellant did not stop, but instead slowed to a walk, turned his head to look in Hemenway's direction, and began to bend his right elbow, raising the gun up. As the gun reached just above the level of his waistline, he began turning his torso and gun toward Hemenway. Hemenway believed appellant was going to try to shoot him, so he drew his service weapon and fired three shots at appellant. Appellant then fell to the ground, having been shot in the abdomen. Hemenway later found appellant's loaded gun on the ground near where appellant fell.

Appellant was charged with one count of attempted murder (§§ 187, subd. (a), 664), five counts of assault with a semiautomatic firearm (§ 245, subd. (b)), three counts of attempted second degree robbery (§§ 211, 664), one count of second degree robbery (§ 211), and one count of possession of a firearm by a felon (§ 12021, subd. (a)(1)). The information included allegations of enhancements for the infliction of great bodily injury, personal and intentional discharge of a firearm, two prior strike convictions, and one prior prison term. A jury convicted appellant on all counts, and found the firearm and great bodily injury enhancement allegations to be true. At a separate bench trial, the court found the prior strike convictions and the prior prison term to be true.

Appellant was sentenced to 58 years to life in state prison and subsequently filed a notice of appeal on November 10, 2005. On appeal, appellant contends there was insufficient evidence to support his conviction of assault with a semiautomatic firearm against Hemenway. We affirm the trial court's judgment.

3

## DISCUSSION

### I. *Standard of Review*

When an appellant challenges the sufficiency of evidence to support a criminal conviction, we ask not whether there is evidence from which the trier of fact could have reached some other conclusion, but whether there is substantial evidence of appellant's guilt. (*In re Michael M.* (2001) 86 Cal.App.4th 718, 726.) Substantial evidence is evidence of credible and solid value, from which a reasonable trier of fact could have found guilt beyond a reasonable doubt. (*Ibid.*) An appellate court's role is limited to viewing the evidence in the light most favorable to respondent, presuming the existence of every fact the trier of fact could reasonably deduce from the evidence in support of the judgment, then determining if the trial court could find the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Staten* (2000) 24 Cal.4th 434, 460.) The judgment must be affirmed if, " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could [find] the essential elements of the crime beyond a reasonable doubt.' " (*People v. Rowland* (1992) 4 Cal.4th 238, 269, quoting *Jackson v. Virginia, supra,* at p. 319.)

### II. *Substantial Evidence Supports the Finding that Appellant Committed an Assault upon Hemenway with a Semiautomatic Firearm.*

Section 245, subdivision (b), states that "[a]ny person who commits an assault upon the person of another with a semiautomatic firearm shall be punished by imprisonment in the state prison for three, six, or nine years." An assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) Therefore, there are two requirements that must be demonstrated in order to demonstrate the commission of an assault: an unlawful attempt to commit a violent injury, and the present ability to commit the same. Appellant argues that there was not substantial evidence to support his conviction under section 245, subdivision (b), but instead there was only evidence based on "suspicion, speculation, supposition, surmise, or conjecture." This is incorrect.

4

Assault with a deadly weapon, which encompasses assault with a semiautomatic firearm, "can be committed by pointing a gun at another person [citation], but it is not necessary to actually point the gun directly at the other person to commit the crime." (*People v. Raviart* (2001) 93 Cal.App.4th 258, 263 (*Raviart*), citing *People v. Laya* (1954) 123 Cal.App.2d 7, 16.) In *Raviart*, the defendant was charged and convicted with two counts of assault with a firearm on a peace officer, after a confrontation with two police officers in which he pointed his gun at only one of the two officers. (*Raviart,* at pp. 261-262.) The *Raviart* court affirmed the lower court's judgment and gave three examples of cases that illustrate its holding that, in order to prove an assault with a firearm, it need not be demonstrated that the assailant pointed his or her gun directly at the other person. (*Id.* at p. 263.)

First, in *People v. McMakin* (1857) 8 Cal. 547 (*McMakin*), the defendant pointed a revolver at a trespasser, "but with the instrument so pointed, that the ball would strike the ground before it reached the witness, had the pistol been discharged." (*Ibid.*) The Supreme Court affirmed the defendant's conviction for assault, holding that an assault may be committed by simply "*presenting* a gun at a person who is within its range" and that "any other similar act, accompanied by such circumstances as denote an intention existing at the time, coupled with a present ability of using actual violence against the person of another, will be considered an assault." (*Id.* at p. 548, italics added.) Furthermore, the drawing of a gun is evidence of an intention to use it. (*Id.* at p. 549.)

In *People v. Hunter* (1925) 71 Cal.App. 315, the defendant tried to pull a pistol from his sock in order to shoot his wife, but she leapt out of a window before he could do so. (*Id.* at pp. 317-318) The defendant appealed on the ground that the evidence was "insufficient to prove the alleged assault in that it does not show that the defendant attempted to use the weapon." (*Id.* at p. 318.) The Court of Appeal affirmed the defendant's conviction, holding that "[t]he evidence is ample to show that the defendant had the intention and present ability to kill his wife. The only question remaining is whether he attempted to carry his purpose into execution. To accomplish that purpose, it was necessary for him to take the gun from his sock, to point it at his wife, and to pull the

5

trigger. *Any one of these would constitute an overt act toward the immediate accomplishment of the intended crime.*" (*Id.* at p. 319, italics added.)

Finally, in *People v. Thompson* (1949) 93 Cal.App.2d 780, the defendant removed a loaded revolver from a chest of drawers and pointed the gun in between two sheriff's deputies and downward. (*Id.* at pp. 781-782) The Court of Appeal affirmed the defendant's conviction on two counts of assault with a deadly weapon, stating that "[b]y drawing the gun with the intent to shoot the officers, defendant performed an overt act sufficient to constitute an assault on both of them." (*Raviart, supra,* 93 Cal.App.4th at p. 266.) "While he did not point the gun directly at either of them, it was in a position to be used instantly. " 'It would indeed be a great defect in the law if individuals could be held guiltless under such circumstances.' " (*Thompson, supra,* 93 Cal.App.2d at p. 783, quoting *McMakin, supra,* 8 Cal. 547 at p. 549.)

Viewing the evidence in the instant case in the light most favorable to the judgment, there is substantial evidence in the record to support the jury's finding that appellant assaulted Hemenway. Hemenway heard a gunshot as he was driving behind a carport on 164th Avenue. He made a u-turn and rode his motorcycle back toward the carport. The victim of the gunshot, Arturo Cruz, had made his way around the wall behind the carport and saw Hemenway on his motorcycle. Cruz yelled for Hemenway, who was unable to understand what Cruz said, but saw Cruz's bloodied T-shirt and stopped his motorcycle. Cruz took a couple steps and then fell to the ground. Hemenway then saw appellant running from the carport in his direction from a distance of approximately 40 feet. Hemenway saw a handgun in appellant's right hand, pointed downward toward the ground. Hemenway yelled at appellant, directing him to stop. Appellant did not stop, but instead slowed to a walk, turned his head to look in Hemenway's direction, and began to bend his right elbow, raising the gun up. As the gun reached just above the level of his waistline, he began turning his torso and gun toward Hemenway. Hemenway believed appellant was going to try to shoot him, so he drew his service weapon and fired three shots at appellant. Appellant then fell to the ground. Hemenway later found appellant's loaded gun on the ground near where he had fallen.

Based on the above evidence, a rational jury could have found beyond a reasonable doubt that appellant committed acts that constitute an assault. When he was confronted by Hemenway, appellant commenced raising a loaded semiautomatic firearm into a position from which he intended to shoot Hemenway. His attempt to shoot Hemenway was prevented by three gunshots from the deputy, who believed that his own life was in danger. While appellant did not point the gun directly at Hemenway, the gun was in a position to be used instantly. "It was enough that defendant brought the gun into a position where he could have used it against" Hemenway had Hemenway not shot him first. (*Raviart*, *supra*, 93 Cal.App.4th at p. 266.) Therefore, appellant's action of raising the gun to and above his waistline constitutes an assault.

Like the defendant in *Raviart*, appellant cites *People v. Williams* (2001) 26 Cal.4th 779, 786 (*Williams*), in contending that his actions do not "support the conclusion that appellant's next action, after being told to stop, was going to be completion of a battery," because he claims those actions were "a far cry from squaring off and pointing a gun at an intended victim." We disagree with appellant's interpretation of *Williams*.

The Supreme Court in *Williams* differentiated between the mental state required for assault and that required for criminal attempt, concluding that "criminal attempt 'need not be the last proximate or ultimate step toward the commission of the substantive crime' . . . ." (*Williams*, *supra*, 26 Cal.4th at p. 786, quoting *People v. Kipp* (1998) 18 Cal.4th 349, 376.) Appellant deduces from this statement that, for assault, the act performed must be the last proximate or ultimate step toward the completion of the battery. This is incorrect. In differentiating between the mental state required for assault and that required for criminal attempt, the *Williams* court explains that "[a]n assault occurs whenever ' "[t]he next movement would, at least to all appearance, complete the battery." ' " (*Williams*, at p. 786, quoting Perkins & Boyce, Criminal Law (3d ed. 1982) § 2, p. 164, italics omitted.) As did the court in *Raviart*, we do not believe that the holding in *Williams* means "that for the crime of assault to occur, the defendant must in every instance do everything physically possible to complete a battery short of actually causing physical injury to the victim." (*Raviart*, *supra*, 93 Cal.App.4th at p. 266; *see*

*also*, 1 Witkin, Cal. Crim. Law (3d ed 2006 supp.) Crimes Against the Person, § 6,
p. 147.) Such an interpretation would contradict numerous precedents, including
*McMakin*, *supra*, 8 Cal. 547, *Hunter*, *supra*, 71 Cal.App. 315, and *Thompson*, *supra*, 93
Cal.App.2d 780. (*Raviart*, at pp. 266-267.) For example, in *McMakin* the Supreme
Court held that simply "*presenting* a gun at a person who is within its range" constitutes
assault, making no mention of pointing or aiming the gun being a required final step
before the commission of a battery. (*McMakin*, *supra*, 8 Cal. at p. 548, italics added.)
Again, a rational jury could have found beyond a reasonable doubt that appellant drew
and raised a loaded semiautomatic firearm past his waste level with the intent to shoot
Hemenway. As was the case in *Raviart*, "[e]ven following the Supreme Court's decision
in *Williams*, that is sufficient to support" appellant's conviction for assault. (*Raviart*,
*supra*, 93 Cal.App.4th at p. 267.)

Finally, appellant contends that "[w]hile the totality of the circumstances may
have justified Hemenway's shooting appellant, they [*sic*] do not support a verdict that
appellant was guilty of assaulting the deputy with a semiautomatic firearm . . . ." This
argument does not jibe with precedent—so much so that it further incriminates appellant
as it admits that Hemenway *may* have been justified in shooting appellant. "If [the
defendant] is advancing with intent to strike his adversary and come[s] sufficiently near
to induce a man of ordinary firmness to believe, in view of all the circumstances, that he
will instantly receive a blow unless he strike[s] in self-defense or retreat[s], the assault is
complete." (*People v. Yslas* (1965) 27 Cal. 530, 634.) Twice in his brief, appellant
admits that the "totality of the circumstances," including "[f]acts such as appellant's
weapon possession and Hemenway's earlier contact with the wounded Cruz," may have
justified Hemenway's shooting of appellant. We conclude that the totality of the
circumstances, including those items mentioned above as well as appellant's motion to
raise and point his weapon, *did* justify Hemenway's firing upon appellant. Again, it is
clear that a rational jury could have found beyond a reasonable doubt that appellant's
actions could have induced "a man of ordinary firmness" in Hemenway's position, in
view of all the circumstances, to believe that he was about to be shot by appellant unless

8

he shot first. Therefore, appellant's assault upon Hemenway was complete. (*Thompson*, *supra*, 93 Cal.App.2d at p. 782.)

In summary, we conclude that there was substantial evidence in the record to support the jury's finding that appellant was guilty of assault with a semiautomatic firearm on Deputy Hemenway.

**DISPOSITION**

Affirmed.


_____
Lambden, J.


We concur:


_____
Kline, P.J.


_____
Richman, J.

Petitioner is filing two separate issues in the Superior Court of Alameda County, Oakland , California. Reasons being: petitioner was mis-insturcted by his appeal counsel (See Exhibit A) and told to file a petition for habeas corpus, initially in the Court of Appeal. This causes the petitioner to be denied for not following the chain of command. In addition to that, petitioner's deadline for the filing of his Federal habeas petition is April 12, 2008. This causes petitioner to request that the court stay the petition, and amend, later, the grounds that petitioner has not had the chance to exhaust by way of state remedies. The grounds are as follows:

**GROUND II**

Petitioner's trial counsel rendered ineffective by not requesting the jury be instructed on the lesser crime of attempted voluntary manslaughter.

**GROUND III**

The trial court erred by allowing two witnesses that were not victims or witnesses to the current charge to testify.

Respectfully submitted,

__ _____

**EXHIBIT A**

**ROSS THOMAS**
Attorney at Law
4104 24th Street, No. 411
San Francisco, California 94114
(415) 627-4052

August 7, 2007

Tommy Bell
V-09957
Pelican Bay State Prison
Post Office Box 7500
Crescent City, California  95531

Dear Mr. Bell:

Regrettably, the California Supreme Court denied our petition for review.  This means that the court will not be reviewing your case.  Enclosed is a copy of the Supreme Court's order denying the petition for review.   I am also enclosing the record on appeal.

With the denial of the petition for review, the state appellate process comes to an end.  Since my appointment covers only this stage of the process, I must withdraw as your attorney.

If you wish to pursue your case further, you may file a petition for writ of habeas corpus in the United States District Court, renewing those issues raised on appeal.  **You may also file a petition for writ of habeas corpus in the California Court of Appeal, raising those issues you believe should have been raised on appeal.**  You must prepare these petitions yourself or retain counsel to represent you. I am enclosing a packet of additional information on how to file petitions for writ of habeas corpus in federal court.

Good luck

Very truly yours,

ROSS THOMAS
Attorney at Law

**EXHIBIT B**

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

```
┌─────────────────────────────────────┐
│                FILED                 │
│ Court of Appeal First Appellate District │
│                                      │
│            SEP 1 0 2007              │
│                                      │
│          Diana Herbert, Clerk        │
│ By_____Deputy Clerk │
└─────────────────────────────────────┘
```

In re TOMMY BELL,                    A118997

     on Habeas Corpus.

                            (Alameda County
                            Super. Ct. No. H38279A)

BY THE COURT:

     The petition for writ of habeas corpus is denied without prejudice to seeking relief

in the first instance in the Alameda County Superior Court, 1225 Fallon St., Oakland, CA

94612. (See *In re Steele* (2004 32 Cal.4th 682, 692; *In re Hillery* (1962) 202 Cal.App.2d

293, 294.)

Dated:    SEP 1 0 2007              **KLINE, P. J.**     P.J.



TOMMY BELL IV/4/756D
P.O. BOX 7500 (V-09957)
CRESCENT CITY, CA 95532

PELICAN BAY STATE PRISON
5905 Lake Earl Dr
Crescent City CA 95532

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT
U.S. COURTHOUSE
450 GOLDEN GATE AVENUE
SAN FRANCISCO, CA 94102-3483

CONFIDENTIAL LEGAL MAIL

RECEIVED

MAR 1 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

PELICAN BAY
G.P. UNIT A-4