IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TOMMY BELL,

      Petitioner,

  v.

BOB HOREL, Warden,

      Respondent.

_____/

No. C 08-01493 CW (PR)

ORDER DENYING PETITION FOR WRIT
OF HABEAS CORPUS; DENYING
CERTIFICATE OF APPEALABILITY

    Petitioner Tommy Bell is a prisoner of the State of
California, incarcerated at Corcoran State Prison.  On June 10,
2009, Petitioner filed a pro se amended petition[1] for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254 challenging the validity
of his 2005 state convictions.  Respondent filed an answer and
Petitioner filed a traverse.  Having considered all of the papers
filed by the parties, the Court DENIES the petition for writ of
habeas corpus.

BACKGROUND

I.  Procedural History

    In 2005, an Alameda County Superior Court jury convicted
Petitioner of attempted murder, five counts of assault with a

---

    [1]  On March 18, 2008, Petitioner filed an original petition for
writ of habeas corpus.  On January 28, 2009, the Court stayed the
petition in order to allow Petitioner to exhaust his claims.  On June
10, 2009, Petitioner informed the Court that the California Supreme
Court denied his state habeas petition on May 13, 2009.  On June 30,
2009, the Court lifted the stay and directed Respondent to file a
response showing cause why Petitioner's amended petition should not
be granted.

United States District Court
For the Northern District of California

semiautomatic firearm, three courts of attempted second degree

robbery, one count of second degree robbery, and one count of

possession of a firearm by a felon.  (Am. Pet. at 2; Resp. Memo. P

& A at 1.)  On October 7, 2005, the trial court sentenced

Petitioner to a total sentence of fifty-eight years to life.  (Am.

Pet. at 2.)

Petitioner timely appealed to the California Court of Appeal.

On February 8, 2007, the California Court of Appeal filed a written

opinion rejecting Petitioner's claims.  (Resp. Ex. 4.)  Petitioner

proceeded to the California Supreme Court, which denied his

petition in a one sentence order on April 18, 2007. (Resp. Ex. 6.)

Petitioner filed unsuccessful habeas petitions in the state courts

and the California Supreme Court ultimately denied his last

petition on May 13, 2009.  (Resp. Ex. 10.)  Petitioner filed the

instant amended petition on June 10, 2009.

II.  Statement of Facts

The facts as set out in the California Court of Appeal's

decision on direct appeal are as follows.

> On October 13, 2004, Diana Valencia and her brother Gilberto
> Valencia accompanied their housemates Marco Trejovilla and
> Luis Medrano, as well as their neighbor Mike Eskridge, in
> Trejovilla's car to a Quik Stop market located near their San
> Leandro apartment complex.  After Trejovilla parked his car
> outside of the Quik Stop, Eskridge walked inside the store and
> purchased beer.  At the same time, [Petitioner] was a
> passenger in a car parked at the Quik Stop, along with Joshua
> Cole, Yonas Melles, "Mead," and "Sid," the driver of this
> second automobile.  From the parking lot, [Petitioner] and his
> companions saw Eskridge pull what they believed to be a large
> quantity of money out of his pocket while he was purchasing
> the beer. [Petitioner] then told his companions that he was
> going to rob Eskridge and directed Sid to follow Trejovilla's
> car as it left the Quik Stop parking lot.
>
> Upon returning to the apartment complex, Trejovilla parked his
> car in his parking space under a carport.  Gilberto got out of

1
2
3
4

the car and walked inside his apartment.  Trejovilla also got out of the car, leaving Diana, Medrano, and Eskridge in the backseat.  While this occurred, Sid stopped his automobile across 164th Avenue from the apartment complex, let [Petitioner] and Melles out, and then drove away with Mead and Cole.

5
6
7
8
9

Trejovilla got out of his car and was met by his friend and neighbor Arturo Cruz, who requested a ride to the BART station.  While the two were conversing, [Petitioner] and Melles approached them, and [Petitioner] asked Cruz if he wanted to buy some marijuana.  Cruz replied, "no," and appellant and Melles pulled out guns, with [Petitioner] pointing his at Cruz's face.  Cruz attempted to knock the gun from [Petitioner]'s hand, but was unsuccessful and only momentarily redirected [Petitioner]'s aim.  [Petitioner] then re-aimed the gun at Cruz and shot him in the chest.

10
11
12

Deputy Hemenway, on motorcycle patrol and driving westbound on 164th Avenue at the time, heard the gunshot as he passed by a wall behind the carport.  He made a u-turn and rode his motorcycle back toward the carport.

13
14
15
16

After shooting Cruz, [Petitioner] pointed his gun at Trejovilla, and then at Diana, Medrano, and Eskridge, who remained in the backseat of Trejovilla's car. [Petitioner] threatened to shoot them if they did not give him something. Diana took Medrano's cell phone and handed it to Trejovilla, who then handed it to [Petitioner]. [Petitioner] and Melles then left.

17
18
19

Meanwhile, Cruz had made his way around the wall behind the carport and saw Hemenway driving by on his motorcycle.  Cruz yelled for Hemenway, who was unable to understand what Cruz said, but saw Cruz's bloodied T-shirt and stopped his motorcycle.  Cruz took a couple steps and then fell to the ground.

20
21
22
23
24
25
26
27

Immediately after Cruz fell to the ground, Hemenway saw [Petitioner] running from the carport in his direction from a distance of approximately 40 feet.  Hemenway saw a handgun in [Petitioner's] right hand. [Petitioner] had the gun pointed downward toward the ground.  Hemenway yelled at [Petitioner], directing him to stop. [Petitioner] did not stop, but instead slowed to a walk, turned his head to look in Hemenway's direction, and began to bend his right elbow, raising the gun up.  As the gun reached just above the level of his waistline, he began turning his torso and gun toward Hemenway.  Hemenway believed [Petitioner] was going to try to shoot him, so he drew his service weapon and fired three shots at [Petitioner]. [Petitioner] then fell to the ground, having been shot in the abdomen.  Hemenway later found [Petitioner]'s loaded gun on the ground near where [Petitioner] fell.

28

3

1   (Resp. Ex. 4 at 1-3.)

2                          LEGAL STANDARD

3        A federal court may entertain a habeas petition from a state

4   prisoner "only on the ground that he is in custody in violation of

5   the Constitution or laws or treaties of the United States."

6   28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death

7   Penalty Act of 1996 (AEDPA), a district court may not grant habeas

8   relief unless the state court's adjudication of the claim:

9   "(1) resulted in a decision that was contrary to, or involved an

10  unreasonable application of, clearly established Federal law, as

11  determined by the Supreme Court of the United States; or

12  (2) resulted in a decision that was based on an unreasonable

13  determination of the facts in light of the evidence presented in

14  the State court proceeding."  28 U.S.C. § 2254(d); <u>Williams v.</u>

15  <u>Taylor</u>, 529 U.S. 362, 412 (2000).  The first prong applies both to

16  questions of law and to mixed questions of law and fact, <u>id.</u> at

17  407-09, and the second prong applies to decisions based on factual

18  determinations, <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

19       A state court decision is "contrary to" Supreme Court

20  authority, that is, falls under the first clause of § 2254(d)(1),

21  only if "the state court arrives at a conclusion opposite to that

22  reached by [the Supreme] Court on a question of law or if the state

23  court decides a case differently than [the Supreme] Court has on a

24  set of materially indistinguishable facts."  <u>Williams</u>, 529 U.S. at

25  412-13.  A state court decision is an "unreasonable application of"

26  Supreme Court authority, under the second clause of § 2254(d)(1),

27  if it correctly identifies the governing legal principle from the

28

                                    4

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. Id. at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El, 537 U.S. at 340. A petitioner must present clear and convincing evidence to overcome the presumption of correctness under § 2254(e)(1); conclusory assertions will not do. Id. Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d). Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). However, the standard of

United States District Court
For the Northern District of California

review under AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim.  In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable.  See Plascencia v. Alameida, 467 F.3d 1190, 1197-98 (9th Cir. 2006); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Greene v. Lambert, 288 F.3d 1081, 1088 (9th Cir. 2002). When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law.  Plascencia, 467 F.3d at 1198; accord Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004).  The federal court need not otherwise defer to the state court decision under AEDPA:  "A state court's decision on the merits concerning a question of law is, and should be, afforded respect.  If there is no such decision on the merits, however, there is nothing to which to defer."  Greene, 288 F.3d at 1089.

DISCUSSION

Petitioner raises three claims in his federal habeas petition. First, he alleges that there was insufficient evidence to support his conviction for assault on Deputy Hemenway with a semiautomatic weapon. (Am. Pet. at 13-17, 27-30.)  Second, Petitioner asserts that counsel was ineffective for failing to request a jury instruction on voluntary manslaughter.  (Am. Pet. at 18-21; 31-35.) Finally, Petitioner claims that the admission of evidence of prior bad acts violated his right to due process.  (Am. Pet. at 22-25.)

I.   Insufficient evidence

Petitioner claims that he never intended to harm Hemenway and never pointed the gun at Hemenway.  (Am. Pet. at 15.)  Petitioner argues that, because an assault immediately precedes a battery, and no battery occurred, he could not have been found guilty of committing assault with a semiautomatic weapon.  (Id. at 29.)  In support of his argument, Petitioner states that "[t]he fact that [he] had an opportunity to fire his gun at the deputy and [he] refrained" demonstrates that he never intended to harm Hemenway.  (Id.)

A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim, which, if proven, entitles him to federal habeas relief.  See Jackson v. Virginia, 443 U.S. 307, 321, 324 (1979).  A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  See id. (quoting Jackson, 443 U.S. at 319).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted.  See Jackson, 443 U.S. at 324.

United States District Court
For the Northern District of California

7

**United States District Court**
For the Northern District of California

1    California Penal Code section 245(b), the statute of

2 conviction, states, "Any person who commits an assault upon the

3 person of another with a semiautomatic firearm shall be punished by

4 imprisonment in the state prison for three, six, or nine years."

5 An assault is defined as "an unlawful attempt, coupled with a

6 present ability, to commit a violent injury on the person of

7 another."  Cal. Penal Code § 240.

8    The California Court of Appeal rejected Petitioner's claim.

9 The appellate court analyzed several California cases in which the

10 state courts affirmed assault convictions where the evidence

11 demonstrated that the defendants did not point their weapons at the

12 victims, reasoning that it was not necessary for a defendant to

13 attempt to use the weapon.  (Resp. Ex. 4 at 5-6.)  The evidence is

14 sufficient if it shows that a defendant intends to use the weapon

15 "coupled with a present ability of using actual violence."  (Id. at

16 5, citing People v. McMakin, 8 Cal. 547, 548-549 (1857).)  In

17 addition, "the drawing of a gun is evidence of an intention to use

18 it."  McMakin, 8 Cal. at 549.

19    Here, the evidence showed that, as Petitioner was running from

20 the scene while carrying a loaded semiautomatic weapon, Hemenway

21 shouted for him to stop.  (Id. at 3.)  Rather than stop, however,

22 Petitioner slowed down to a walking pace and began to turn his head

23 toward Hemenway while raising the gun by bending his right arm.

24 (Id.)  When Petitioner had raised the gun above the level of his

25 waist, Petitioner began to turn his torso toward Hemenway, causing

26 Hemenway to believe that Petitioner was going to shoot him.  (Id.)

27 Viewing the evidence in the light most favorable to Respondent, it

28

can be inferred that Petitioner intended to use his weapon and had the present ability to do so.  The Court of Appeal's rejection of Petitioner's claim was not contrary to or an unreasonable application of Supreme Court precedent.

II.  Ineffective Assistance of Counsel

Petitioner claims that counsel rendered ineffective assistance because she failed to request a jury instruction on attempted voluntary manslaughter.  (Am. Pet. at 19-20, 31-32.)  Petitioner maintains that the shooting of Cruz was accidental and, therefore, had the jury had the option of convicting him of attempted voluntary manslaughter, it would have done so.  (Id. at 19-20.)

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  Id.  In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Strickland, 466 U.S. at 687-88.  The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable.  See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).  Judicial scrutiny of

United States District Court
For the Northern District of California

counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  <u>See</u> <u>Strickland</u>, 466 U.S. at 689.  Second, a petitioner must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  <u>Id.</u>

The California Supreme Court denied this claim without comment.  (Resp. Ex. 10.)

In California, the court must instruct the jury regarding a lesser included crime if substantial evidence would support a guilty verdict of the lesser included crime rather than the charged crime.  <u>See</u> <u>People v. Cunningham</u>, 25 Cal. 4th 926, 1008 (2001). Voluntary manslaughter, a lesser included offense of murder, is "the unlawful killing of a human being without malice aforethought upon a sudden quarrel or heat of passion." <u>People v. Cole</u>, 33 Cal. 4th 1158, 1215 (2004) (internal quotation marks omitted). Voluntary manslaughter is also available when a defendant acts in an actual but unreasonable belief that he must defend himself from imminent danger of death or great bodily injury.  <u>People v. Randle</u>, 35 Cal. 4th 987, 994 (2005).

The evidence does not support either theory.  Petitioner merely asserts that he had no intention of shooting Cruz. Petitioner claims that Cruz's act of trying to knock the gun out of Petitioner's hand caused the gun to fire accidentally.  (Am. Pet.

United States District Court
For the Northern District of California

at 20.)  This theory does not support an attempted voluntary manslaughter instruction.  There was no evidence that Cruz and Petitioner were engaged in a sudden quarrel, or that Petitioner believed he had to defend himself against imminent danger.

In short, counsel was not deficient for failing to request such an instruction.  See Strickland, 466 U.S. at 694.  Moreover, because the evidence did not support an instruction on attempted voluntary manslaughter, it simply cannot be said that there was a reasonable probability that but for counsel's failure to request such an instruction, the result of the proceeding would have been different.  See id.

III. Evidence of prior bad acts

Petitioner claims that the trial court erred when it admitted evidence of two prior robberies because the evidence was highly prejudicial.  (Am. Pet. at 33.)  Petitioner states that his prior bad acts would only have been admissible if he had testified and, because he did not, the admission of the prior bad acts violated his right to remain silent.  (Id. at 34-35.)

Prior to trial, the trial court heard argument concerning two prior robberies that the prosecution intended to introduce at trial under California Evidence Code § 1101 to prove that Petitioner intended to rob Cruz.  (RT 20-22.)  The trial court ruled that the prosecution could indeed use evidence of those prior robberies in its case-in-chief for the purpose of showing intent.  (RT 28.)

At trial, two witnesses testified that Petitioner had previously robbed them.  Vernon Clark testified that Petitioner robbed him at gunpoint on January 17, 2003, by demanding his

11

United States District Court
For the Northern District of California

wallet.  (RT 840).  Austin Cattermole testified that Petitioner robbed him at gunpoint and took his wallet and cell phone.  (RT 846-847.)

The California Supreme Court denied this claim without comment.  (Resp. Ex. 10.)

The United States Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."  Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).  Absent such a ruling from the Supreme Court, a federal habeas court cannot find the state court's ruling was an "unreasonable application" of "clearly established federal law" under 28 U.S.C. § 2254(d)(1).  Id. (citing Carey v. Musladin, 549 U.S. 70, 77 (2006)).  Under Holley, therefore, habeas relief cannot be granted on Petitioner's claim that the admission of overly-prejudicial evidence of his prior acts violated his right to due process.  See Holley, 568 F.3d at 1101 n.2 (finding that, although trial court's admission of irrelevant and prejudicial evidence violated due process under Ninth Circuit precedent, such admission was not contrary to, or an unreasonable application of, "clearly established Federal law" under section 2254(d)(1), and therefore not grounds for granting federal habeas relief).

Moreover, even if admission of the uncharged conduct were erroneous, in order to obtain federal habeas relief on this claim, Petitioner would have to show that the error was one of constitutional dimension and that it was not harmless under Brecht v. Abrahamson, 507 U.S. 619 (1993).  He would have to show that the

12

United States District Court
For the Northern District of California

error had "'a substantial and injurious effect' on the verdict.'"
<u>Dillard v. Roe</u>, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting
<u>Brecht</u>, 507 U.S. at 623).  Here, the evidence showed that
Petitioner previously robbed two separate individuals at gunpoint.
This evidence was probative of Petitioner's intent to rob Cruz when
he pulled his gun.  In addition, the trial court gave a limiting
instruction directing the jury that it could only consider the
evidence of the prior robberies as it tended to prove that
Petitioner had the intent to rob Cruz.  <u>See, e.g.</u>, <u>Houston v. Roe</u>,
177 F.3d 901, 910 n.6 (9th Cir. 1999) (admission of similar prior
bad acts to show motive and intent, coupled with limiting
instructions, was appropriate).

Accordingly, the California Court of Appeal's decision denying
relief on this claim was not contrary to or an unreasonable
application of clearly established federal law.  <u>See</u> 28 U.S.C.
§ 2254(d).

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas
corpus is denied.

No certificate of appealability is warranted in this case.
<u>See</u> Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll.
§ 2254 (requiring district court to rule on certificate of
appealability in same order that denies petition).  Petitioner has
failed to make a substantial showing that any of his claims
amounted to a denial of his constitutional rights or demonstrate
that a reasonable jurist would find this Court's denial of his

1    claims debatable or wrong.   See Slack v. McDaniel, 529 U.S. 473,

2    484 (2000).

3        The clerk shall enter judgment and close the file.   All

4    pending motions are terminated.   Each party shall bear his own

5    costs.

6        IT IS SO ORDERED.

7

8    Dated:   5/3/2011

_____
CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE

1
2

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

3

4   TOMMY BELL,

Case Number: CV08-01493 CW

            Plaintiff,
5
                                                    **CERTIFICATE OF SERVICE**
6        v.

7   BOB HOREL et al,

            Defendant.
8   _____/

9

10  I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
    Court, Northern District of California.

11  That on May 3, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said
    copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing
12  said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery
    receptacle located in the Clerk's office.

13

14

15  Tommy  Bell V-09957
    3A05-141
16  Corcoran State Prison
    P.O. Box 3461
17  Corcoran,  CA 93212

18  Dated: May 3, 2011

                                    Richard W. Wieking, Clerk
19                                  By: Nikki Riley, Deputy Clerk

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

15